# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXIC0

UNITED STATES OF AMERICA,

    Plaintiff,

  vs.                                                                                       Criminal No. 98-0391 JC

MEL LAMBERT VELARDE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of the Motion to Quash Subpoenas Served upon the Jicarilla Apache Tribe ("Tribe") *(Doc. 65)*. The relevant subpoenas are directed to various Tribal officials and were issued by the Court at the request of the Assistant United States Attorney and of the attorney for the criminal defendant in this case. Contrary to the Tribe's contention, I find that sovereign immunity does not stand as a complete bar to enforcement of the subpoenas.

The Indian Major Crimes Act, 18 U.S.C. § 1153 ("the Act"), provides federal courts with exclusive jurisdiction over fourteen serious crimes when they are committed by an Indian on Indian land. Aggravated sexual abuse of a child, the crime with which Defendant Velarde is charged, is one of these enumerated crimes. *See id.* Defendant Velarde and the United States seek documents from, and testimony of, certain tribal officials including the Director of the Tribe's Mental Health and Social Services Department, a tribal police officer and the police chief, and the Tribe's Census Officer. The Jicarilla Apache Tribe has interposed sovereign immunity as a bar to enforcement of the subpoenas.

Although tribal immunity does not extend to individual members of the tribe, it is implicated when tribal officials are involved in their official capacities. *See United States v. Wheeler*, 435 U.S. 313, 323 (1978). As the Supreme Court found in *Wheeler*, "Indian tribes still possess those aspects of sovereignty not withdrawn by treaty or statute" and a tribe's power to punish its members for offenses against the tribal law "is an aspect of its retained sovereignty . . . further supported by the absence of any federal grant of such power." *Id.* at 323, 326-27. Any sovereign immunity possessed by the tribe is "trumped" by the greater authority of the United States, however. Simply put, "tribal sovereignty does not extend to prevent the United States from exercising its superior sovereign powers." *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1459 (9th Cir. 1994).

The Tribe relies heavily on *United States v. James*, 980 F.2d 1314 (9th Cir. 1992). In *James*, the Ninth Circuit acknowledged that through the Indian Commerce Clause, Congress possessed the power to abrogate a tribe's sovereign immunity. But the *James* court found that Congress had not exercised that power because the Act did not expressly state that a tribe's sovereign immunity was abrogated. *See id.* at 1320. The *James* opinion rejected the assertion that the grant of exclusive federal jurisdiction pursuant to § 1153 could be read as an implicit abrogation of a tribe's sovereign immunity. The Ninth Circuit panel reasoned that

> By making individual Indians subject to federal prosecution for certain crimes, Congress did not address implicitly, much less explicitly, the amenability of the tribes to the processes of the court in which the prosecution is commenced.

*James*, 980 F.2d at 1319. Thus, the tribe's sovereign immunity remained intact unless it was waived by the tribe. *See id.*

I disagree with the *James* conclusion. By requiring federal prosecution of an individual tribal member under certain circumstances, the Major Crimes Act necessarily intrudes on the "otherwise

exclusive jurisdiction of the tribes to punish Indians for crimes committed on Indian land." *United States v. Antelope*, 430 U.S. 641, 643 n.1. (1977). This extension of federal jurisdiction "inherently includes every aspect of criminal procedure applicable to prosecution of such crimes." *In re Long Visitor*, 523 F.2d 443, 446 (8th Cir. 1975) (upholding authority of federal grand jury to issue subpoena to tribal members on the reservation pursuant to its jurisdiction under the Major Crimes Act). The *James* court did not take into account the duty of this Court, as well as tribal police and other tribal officials, to comply with federal statutory and constitutional protections. *See United States v. Snowden*, 879 F. Supp. 1054, 1057 (D. Or. 1995). I find that the proper procedure is to balance the sovereign interests of the United States and the Tribe. *See id.*

I note that courts often perform this type of balancing where sovereign immunity is asserted in an effort to quash a subpoena. Where a federal agency is subpoenaed by a federal court as a third party in claims arising under federal law, the agency cannot assert sovereign immunity unless a statute or a valid regulation authorizes the agency to do so. *See Leyh v. Modicon, Inc.*, 881 F. Supp. 420, 423 (S.D. Ind. 1995). In such a case, the court's interest in enforcing federal law outweighs the agency's assertion of sovereign immunity. However, where Congress authorizes the agency to withhold information, then separation of powers tips the balance in favor of sovereign immunity. Similarly, where the federal court has only removal jurisdiction based on an underlying state law claim, the balancing of sovereign interests shifts. In those circumstances, sovereign immunity of the United States and the Supremacy Clause together defeat the interest of the federal court in seeing that state law is enforced. *See, e.g., Connaught Labs., Inc. v. SmithKline Beecham P.L.C.,* 7 F. Supp. 2d 477, 479 (D. Del. 1998). I note also that prior to the enactment of the Foreign Sovereign Immunities Act, foreign nations lacked sovereign immunity sufficient to quash a subpoena when they

engaged in commercial activities. *See In re Grand Jury Investigation of the Shipping Industry*, 186 F. Supp. 298, 318 (D.D.C. 1960).

In balancing the sovereign interests, I look first to the interest of the United States in seeing that the Major Crimes Act is enforced, coupled with this Court's interest in seeing that Defendant's constitutional rights of due process and a fair trial are protected. *See Snowden*, 879 F. Supp. at 1057. If these interests are substantial enough to justify an infringement of tribal sovereignty, I will then examine the Tribe's interests to determine whether the subpoenas should nonetheless be quashed to protect an important tribal interest.

Enforcement of the Major Crimes Act has been held to provide the federal courts with a sufficient interest to justify implied abrogation of sovereignty in order to serve a federal subpoena on the reservation. *See Long Visitor*, 523 F.2d at 446-47. By analogy, *United States v. Boggs* held that federal interest in enforcing 18 U.S.C. § 1163 (making embezzlement and theft from an Indian tribal organization a federal crime) was a sufficient interest to justify the intrusion on tribal sovereignty of subjecting the tribal records to a grand jury subpoena. *See Boggs*, 493 F. Supp. 1050, 1052-53 (D. Mont. 1980). I conclude that the federal government's interest in enforcing the Major Crimes Act is sufficient to justify an infringement on tribal sovereignty.

I also conclude that the Court's interest in protecting Defendant's constitutional rights justifies an intrusion upon tribal sovereignty in order to enforce a subpoena on behalf of Defendant. In *Snowden*, the district court was faced with facts virtually identical to those before this Court. The counseling center of the Confederated Tribes of the Warm Springs Reservation of Oregon asserted sovereign immunity in an effort to quash a subpoena issued by a federal court on behalf of a criminal defendant. *See Snowden*, 879 F. Supp. at 1055-56. The *Snowden* court found that "[e]ven if the

[tribal counseling center] did not waive its sovereign immunity, Snowden's constitutional rights of due process, fair trial, confrontation, and compulsory process outweigh the [tribe's] claim of immunity." *Id.* at 1057. In reaching this decision, the *Snowden* court cited cases in which federal courts ordered third-party foreign sovereigns to submit to service of subpoenas in order to protect a defendant's rights. *See id.* (citing *United States v. Noriega*, 1990 WL 142524 (S.D. Fla. 1990), *vacated due to settlement*, and *Minpeco S.A. v. ContiCommodity Servs., Inc.*, 118 F.R.D. 331, 333 (S.D.N.Y. 1988)). *Snowden* distinguished the Ninth Circuit Court of Appeals holding in *James* on the grounds that the defendant in *James* did not raise these issues. *See Snowden*, 879 F. Supp. at 1057.

Next, I look to the sovereign interests of the Tribe in resisting the subpoena. First, I note that Federal Rule of Criminal Procedure 17(e)(1) allows for service of a subpoena on the reservation. *See also Long Visitor*, 523 F.2d at 447. Therefore, control over service of process on tribal lands is not at issue here. Consequently, the tribal interests must be the right to exercise control over tribal officials to prevent them from testifying in their official capacities and the right to restrict access to mental health records and police records in the possession of tribal officials. The tribal treasury is not implicated (as it would be, for example, if the tribe were subject to a civil suit), and the information sought is not critical to tribal self-government or tribal self-sufficiency. In fact, the tribal counseling center's role appears to be more of a proprietary function as opposed to a government function. The Tribe provides no reason why its asserted interest in preserving the confidentiality of patient records is a sovereign interest as opposed to a personal privacy interest held by the patient or therapist. Instead, the privacy interest can be protected by an *in camera* review to determine whether evidentiary privileges or discovery protections should apply. I conclude that the Tribe has not shown

a tribal interest any greater than that asserted by the Confederated Tribes in *Snowden*, 879 F. Supp. at 1057-58.

I find that the Court's interests in seeing that federal law is enforced and that Defendant's constitutional rights are protected outweigh any residual sovereign immunity that the Tribe might enjoy after the enactment of the Major Crimes Act. I agree with the approach taken by the courts in *Snowden*, *Long Visitor*, and *Boggs*, and I reject the overly simplistic analysis of *James*.

I also conclude that the Tribe has waived sovereign immunity as to the tribal police records and testimony by tribal police and census officials. The Tribe voluntarily provided a tribal records check, tribal enrollment information, tribal incident reports, and interviews with tribal police to federal officials. A tribe expressly waives its sovereign immunity with respect to a particular agency when that agency voluntarily provides documents to the Government relevant to the case. *See James*, 980 F.2d at 1320. The Tribe "cannot selectively provide documents and then hide behind a claim of sovereign immunity when the defense requests different documents from the same agency." *Id.* I reject the Tribe's contention that there could be no waiver because the prior disclosures were not authorized. The prior disclosures were made by tribal police and census officers, as well as the tribal president. All of these individuals had lawful access to, and control of, the information and the authority to release that information to the Government. I conclude that the Tribe has waived any immunity with respect to the subpoenas served on Jose Sanchez, Leeson Velarde and Lenora Wells.

Wherefore,

**IT IS ORDERED** that the Jicarilla Apache Tribe's Motion to Quash Subpoenas Served upon the Jicarilla Apache Tribe, filed January 8, 1999 *(Doc. 65),* is **denied.**

DATED this 1st day of March, 1999.

*[signature: John Edwards Conway]*
**CHIEF UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Counsel for Plaintiff: | Michael D. Cox |
| | Kevin K. Washburn |
| | Assistant U. S. Attorneys |
| | U. S. Attorney's Office |
| | District of New Mexico |
| | Albuquerque, New Mexico |
| Counsel for Defendant : | Peter Schoenburg |
| | Rothstein, Donatelli, Hughes, Dahlstrom, |
| | Cron & Schoenburg, LLP |
| | Albuquerque, New Mexico |
| Counsel for Movant: | Cynthia A. Kiersnowski |
| | Nordhaus, Haltom, Taylor, |
| | Taradash & Frye, LLP |
| | Santa Fe, New Mexico |