IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

v.                                                                    CR No. 98-391 LH

**MEL LAMBERT VELARDE,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION FOR NEW TRIAL

THIS MATTER comes before the Court on Defendant Mel Lambert Velarde's Superseding Motion for a New Trial (Docket No. 309), which is premised on grounds of newly discovered evidence. The Court, having considered the motion, numerous briefs filed in support and in opposition to it, the history of this case, relevant case law, and oral argument of counsel heard on March 15, 2006, concludes that Defendant's motion is not well taken and shall be **denied**.

### I.  Procedural Background

Defendant was indicted on charges of aggravated sexual abuse in June of 1998. Defendant's first trial took place from March 23-29, 1999, before the Honorable Chief Judge John E. Conway. A jury found Defendant guilty. Defendant was sentenced and appealed his conviction which resulted in a reversal and new trial. The reversal was based upon the district court's admission of expert testimony without an inquiry into the reliability of such testimony. Upon remand from the Tenth

Circuit Court of Appeals, the case was re-assigned to the undersigned judge. Defendant's second trial took place from September 25-27, 2001. The jury found Defendant guilty of aggravated sexual abuse, he was sentenced and again appealed the verdict. On February 18, 2004 the Tenth Circuit Court of Appeals affirmed the conviction.

On September 27, 2004, Defendant filed his motion for a new trial. The motion itself contained no factual basis for the content of the "newly discovered evidence" – it contained statements of defense counsel only. The Court granted Defendant six extensions of time in which to file his reply brief. The affidavit of Phil Gallegos was attached to Defendant's second motion for extension of time, filed on December 2, 2004. It was also attached to the reply brief which was finally filed on May 6, 2005.

In his affidavit, Mr. Gallegos states that he "became aware, both formally and informally, that L.V. had made false accusations of inappropriate touching against Anthony Bercera and Antonio Pena . . . ." (Gallegos Aff., ¶2). This affidavit states that on or about the week of September 17, 2001, Mr. Gallegos asked Special Agent Chimits if he was aware that L.V.[1] recently had made false allegations of inappropriate touching against a teacher and the vice-principal at Dulce High School. (*Id*. ¶6). Mr. Gallegos further averred that he was a former police officer and that he reminded Special Agent Chimits of his legal obligation to fully disclose this type of evidence to the defense attorney. (*Id*. ¶9). Mr. Gallegos states that "Agent Chimitz's [sic] reaction gave me the feeling that Agent Chimitz [sic] was already aware of L.V.'s false allegations." (*Id*. ¶7). This is the main substance of the factual basis asserted by Defendant for his motion for a new trial. As noted above, Defendant's re-trial took place from September 25-27, 2001, a matter of days after this alleged

---

[1] L.V. is the alleged victim in this case.

conversation.

In a subsequent affidavit, Special Agent Chimits refuted that a conversation of the nature described in Defendant's motion ever occurred. (Docket No. 315).

In a December 16, 2005 memorandum opinion and order the Court discussed applicable *Brady*[2] and *Sinclair*[3] standards, and stressed the necessity that under either standard, Defendant be prepared to present evidence that was material and exculpatory, and that would either be admissible at trial or that is "so promising a lead to strong exculpatory evidence that there could [have been] no justification for withholding it." *Ellsworth v. Warden*, 333 F.3d 1, 5 (1st Cir. 2003). *See* Mem. Op. and Order at 7 (Docket No. 349). The Court subsequently ordered briefing on the ultimate admissibility of false accusations by L.V. under FED.R.EVID. 412, prior to setting the March 15, 2006 hearing on legal issues. The Court stated its reasoning for proceeding in this manner: "Rather than proceed with a costly and time-consuming evidentiary hearing, as well as potentially with at least a portion of a new trial, the Court determines that it is prudent, at this juncture, to determine the ultimate admissibility of such evidence, if established." Mem. Op. and Order at 1-2 (Docket No. 351). The Court also expressed concern that placing the alleged victim, L.V., on the stand at an evidentiary hearing could violate the policy behind Rule of Evidence 412. *Id*. at p. 2.

This procedural history illustrates the extent of the Court's concern as to the admissibility of the evidence relied upon by Defendant in his efforts to satisfy his heavy burden in order to secure a third trial based upon "newly discovered evidence." It also illustrates the extensive efforts made by the Court to afford both parties an opportunity to present their respective positions.

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

[3] *United States v. Sinclair*, 109 F.3d 1527 (10th Cir. 1997).

## II.  Analysis of Content of "Newly Discovered Evidence"

FED.R.CRIM.P. 33 provides that upon a motion from a defendant, the Court may vacate any judgment and grant a new trial "if the interest of justice so requires." The Court is afforded discretion in making its ruling, and may weigh the evidence and assess witness credibility. *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999). Such a motion, however, is regarded with disfavor and should only be granted with great caution. *Id*.

Given Defendant's burden under the *Brady* and *Sinclair* standards to establish admissible evidence or something that would lead to admissible evidence, and in light of the weakness of the Gallegos affidavit, the Court inquired at the March 15, 2006 hearing as to the precise nature of the testimony Defendant intended to offer.

Defense counsel Marc Lowry responded generally that the entirety of his evidence regarding alleged false accusations by L.V. consists of limited testimony of the investigator for the defense; the testimony of L.V.'s history teacher, Mr. Bercera; testimony of L.V.'s school's principal, Mr. Reese; and, testimony of L.V.'s school's vice principal, Mr. Pena. Mr. Lowry elaborated in his proffer only about a meeting in the principal's office. He indicated that Mr. Bercera and Mr. Reese would discuss this meeting they attended with L.V. and her mother shortly after September 11, 2001. During the meeting, Mr. Bercera was asked if he touched L.V. "inappropriately." He denied doing so. There was no indication as to who, if anyone, actually made such an accusation of touching by Mr. Bercera. During the meeting Mr. Reese asked L.V. why, if she had a problem with Mr. Bercera, she had not brought the problem to the attention of the vice-principal, Mr. Pena. At that point L.V. stated, "Because he scares me." When asked why Mr. Pena scared L.V., she stated, "He touches me."

Mr. Lowry also indicated that Mr. Pena discussed an investigation that he participated in, with

4

a defense investigator. Mr Lowry made the vague statements that "they didn't think [L.V.] was telling the truth," and that now Mr. Pena cannot recall, which the Court interprets to mean that Mr. Pena cannot recall his participation in the investigation.

The Court inquired whether the discovery of this information led the defense to other admissible exculpatory evidence. Mr. Lowry responded that, when Mr. Gallegos approached the defense team with the information contained in his affidavit, his testimony led them to the underlying allegations of inappropriate touching. When queried by the Court, defense counsel indicated his position that the basis for admissibility of this evidence is as an attack on the credibility of the government's key witness, L.V. Mr. Lowry stated that it is not a general credibility attack, but one very specific to her tendency to fabricate stories about other people touching her.

The Court inquired as to what type of "inappropriate touching" was involved in the alleged accusations. The Court informed defense counsel that it was necessary for defense counsel to specify what evidence he had as to how the touching was described and who would be testifying to describe it. According to defense counsel, Mr. Bercera will be unable to testify as to what kind of touching the accusation against him involved. Defense counsel indicated that he himself does not know where on her body L.V. claims to have been touched by Mr. Pena. Defense counsel stated that he did not know what L.V. told the principal. When asked, defense counsel was unable to relate to the Court what the principal, Mr. Reese, would testify as to the content of L.V.'s accusations. There is no proof before the Court as to the nature of the alleged touching, or where on her body L.V. was allegedly touched by either Mr. Pena or Mr. Bercera.

In summary, the only proof before the Court is: (1) that L.V. stated at the meeting that Mr. Pena scared her because he touches her; and (2) that Mr. Bercera denied any inappropriate touching

5

of L.V. There was no proffer of evidence that L.V.'s accusation that Mr. Pena "touches me" is false, other than a vague statement from defense counsel that "they didn't think [L.V.] was telling the truth," apparently during the investigation mentioned above.

### III. Analysis of Admissibility of "Newly Discovered Evidence"

Defendant's argument basically is that L.V. made false allegations of inappropriate touching against a teacher and an assistant principal at her school, and that because she made such other false accusations, her accusation against Defendant must also be false. For the reasons that follow, the Court concludes that Defendant's "newly discovered evidence" is not admissible.

First of all, the Court is unable to conclude that the Gallegos affidavit contains reliable evidence. The affidavit seems to be based on hearsay. Although it states that Mr. Gallegos became formally and informally "aware" that L.V. had made false accusations of inappropriate touching, it provides no foundation for this statement. This "awareness" could be based on rumors or hearsay, or conversely, on a foundation of an admissible, concrete nature. There is no way for the Court to evaluate the basis for this statement. The affidavit does not state that Mr. Gallegos has first-hand knowledge that L.V. had made false accusations of inappropriate touching against two individuals -- it merely states that Mr. Gallegos asked Agent Chimits if *he* (Chimits) was aware of such false accusations. For these reasons, the Court concludes that the Gallegos affidavit does not constitute competent evidence.

Furthermore, the proffer by defense counsel at the March 15 hearing did not provide any admissible evidence to support the allegation first brought up by the Gallegos affidavit: that L.V. had falsely accused Mr. Bercera and Mr. Pena of inappropriate touching. To be admissible, evidence

must be probative and relevant. The Court concludes that the probative value of the proffered evidence is virtually nil. There is no proof before the Court as to whether L.V. indeed accused Mr. Bercera of an inappropriate touching. What is in the record is that Mr. Bercera denied touching her inappropriately. While there is evidence that L.V. stated that Mr. Pena "touches me," there is no evidence that the accusation is false. Further, there is no proof before the Court as to whether or not L.V. accused Mr. Bercera and/or Mr. Pena of inappropriate touching of a sexual nature. In fact, according to defense counsel, he is presuming the inappropriateness of the alleged touching, based upon the assumption that a meeting with L.V.'s mother and the principal would not have otherwise occurred. Defense counsel admitted ignorance as to the specific content of L.V.'s accusations against Mr. Bercera and Mr. Pena.

Even if Defendant's evidence were more complete and stronger, the probative value of this type of evidence would still depend on the inference that, because L.V. made false accusations, that her accusations about the incident charged in the indictment are also false. In part because the circumstances of the two incidents differ so substantially, the value of the inference to be drawn is minimal. The fact that the claimed fabrications followed the incident charged in the indictment rather than preceded it weakens their probity. The probative value of this type of evidence is further weakened by the fact that this evidence is of a collateral matter, did not involve Defendant in any way, and allegedly occurred 2-3 years after the incident charged in the indictment. As noted above, these alleged accusations against Mr. Bercera and Mr. Pena involved unspecified types of touching that have yet to be described to the Court. There certainly is no proof that these other alleged incidents were of a sexual nature. The alleged Bercera/Pena incidents could have consisted of a touching such as a shove or other minor assault, for example.

The Gallegos affidavit and proffer by counsel at the March 15, 2006 hearing simply lack probity. Consequently, it would be unreasonable to ask the jury to infer that because L.V. fabricated these unrelated, mostly non-specific and vague accusations in 2001, that she falsely made specific accusations of sexual assault against Defendant 2-3 years earlier. This proffered evidence has little or no probative value as to whether Defendant was falsely accused of aggravated sexual assault in this case.

Due to these problems and deficiencies, this evidence is inadmissable under Federal Rule of Evidence 608(b).[4] Rule 608(b) prohibits specific instances of a witness's conduct, offered to attack or support a witness's credibility, to be proved by extrinsic evidence. This is certainly extrinsic impeachment evidence, as it would be obtained from witnesses other than L.V. Instances of conduct that are offered solely on the issue of a witness's credibility are frequently characterized as "collateral" matters, because they do not address elements of any cause of action or defense involved in the lawsuit. Thus, the rule is often stated in these terms: extrinsic evidence is inadmissible to prove collateral matters. WEINSTEIN'S FEDERAL EVIDENCE §608.20[1] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2005). The testimony proffered to establish other false accusations by L.V. against persons other than the Defendant in completely separate incidents should be categorized as a collateral matter. The lack of similarity of the events surrounding the prior and present allegations, and the slight degree of probative value of the proffered evidence on issues that are *not* collateral, such as L.V.'s credibility, bias, interest and motives, prompt the Court to exercise its discretion under

---

[4] Rule 608(b) states: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . . ."

Rule 608(b) and find the proffered evidence is inadmissible. The Court simply finds no relevant legal basis for departing from Rule 608(b)'s command that extrinsic evidence not be used to impeach a witness.

Additionally, the Court agrees with the United States that the danger of unfair prejudice exceeds the probative value of Defendant's evidence under Rule 403. Proof of alleged collateral matters such as these are remote to the issues in this case and would necessitate proof that the accusations (1) occurred; and (2) were false. This would involve the type of "trial within a trial" that the Court in its discretion may avoid in the interest of avoiding an unnecessary excursion, misleading the jury, juror confusion and speculation. As noted above, the relevance and probative value of this evidence is extremely slight and the danger of confusion and prejudice is great. Even to the extent that this evidence might be probative, its probative effect is outweighed by its prejudice to the government's case, and consequently under Rule 403, the Court does not find there is a basis for the allowance of this testimony.

The one remaining issue however is whether the proffered evidence is constitutionally required to be admitted. "The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" *Davis v. Alaska*, 415 U.S. 308, 315 (1974). Admission of all evidence that is the least bit probative of credibility is not, however, always constitutionally required. *United States v. Bartlett*, 856 F.2d 1071, 1088 (8th Cir. 1988).

As noted above, the proffered evidence is inadmissible due to its slight probative value and its highly prejudicial effect. As a general proposition, the Confrontation Clause does not compel production of evidence of this character. While defense counsel argued at the hearing that

9

Defendant's evidence is offered to illustrate L.V.'s tendency to fabricate stories about other people touching her, it is too attenuated in terms of what type of touching and in terms of time, to be probative. First of all, the one accusation in the record is the statement that Mr. Pena scared L.V. because "he touches me." There is no proof before the Court that the statement "he touches me" is false. This does not amount to proof of a false accusation against Mr. Pena. Insofar as Mr. Bercera is concerned, the only thing in the record is a denial by Mr. Bercera, but in effect no accusation, given the lack of information as to the content or source of any accusation.

Defendant's evidence falls far short of showing a scheme of fabrication by L.V. Certainly this evidence is not relevant to show false accusations of a similar nature, with the same intent, motivation and plan or to establish possible biases, prejudices, or ulterior motive of L.V., which are "always relevant as discrediting the witness and affecting the weight of [her] testimony." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Exclusion of this evidence does not deprive Defendant of a constitutional right. *Id*.

**WHEREFORE** because the "newly discovered evidence" in this matter is inadmissible due its lack of probative value, as well as under Rules 608(b), 403 and 404(b), and because its admission is not mandated by the Confrontation Clause, Defendant Mel Lambert Velarde's Superseding Motion for a New Trial (Docket No. 309) shall be **denied**.

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**